```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA       *    Case No. 15-CR-0088(SJ)
                               *
                               *    Brooklyn, New York
                               *    March 27, 2015
     v.                        *
                               *
ADAMOU DJIBO,                  *
                               *
          Defendant.           *
                               *
* * * * * * * * * * * * * * * *

          TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL HEARING
             BEFORE THE HONORABLE MARILYN D. GO
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:            KAREN L. KONIUSZY, ESQ.
                               Asst. United States Attorney
                               United States Attorney's Office
                               271 Cadman Plaza
                               Brooklyn, NY 11201


For the Defendant:             CESAR DE CASTRO, ESQ.
                               Law Office of Cesar De Castro
                               40 Wall Street
                               28th floor
                               New York, NY  10005
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1        (Proceedings commenced at 11:15 a.m.)
2                THE CLERK:  Criminal cause for bail application,
3        USA vs. Adamou Djibo.  The case is 15-CR-88.  Counsel, your
4        name for the record.
5                MS. KONIUSZY:  Karen Koniuszy for the United
6        States.  Good morning, Your Honor.
7                MR. DeCASTRO:  Good morning.  Cesar DeCastro for
8        Mr. Djibo.
9                THE COURT:  Good morning, counselors.  Good
10       morning, Mr. Djibo.
11               Now, this matter has been referred to me for a bail
12       hearing.  He's been in custody.  I'll let the defense counsel
13       present the case.
14               MR. DeCASTRO:  Thanks, Judge. Yes, it's our
15       application, obviously.
16               I'm proposing a bail package.  I guess let me --
17       I'll start with what the proposed bail package would be in
18       the first place.
19               I would propose a 150 or $200,000 personal
20       recognizance bond that can be fully secured by the
21       defendant's residence.
22               He has a home at 45 Autumn Lane in Hartford,
23       Connecticut, where he lives with five of his children, that
24       range from ages three to 18.  That has house been appraised
25       at somewhere in the neighborhood of 270 to $300,000.

1 And he also has individuals that could --
2 financially responsible people who could sign as security as
3 well. They're not -- none of the people that we would
4 propose are making considerable amounts of money. However,
5 that's the reason for proposing that the bond be secured by
6 his home.
7 He lives in Connecticut, as I said, with his
8 children and his common-law wife who has -- and his children
9 are three to 18 years old. His 18 year old is currently
10 looking at colleges. He's actively involved in that. And, of
11 course, he's helping taking care of a three year old, at
12 least prior to his arrest.
13 His wife owns a beauty salon in Connecticut. So
14 that shows more ties to his Connecticut community.
15 And so I'm proposing that be the bond with
16 financially responsible individuals as well.
17 I'd note that Pretrial also recommends that he
18 could be released with certain conditions if Your Honor felt
19 it necessary. Certainly home detention could be appropriate.
20 He could help take care of his very young children, as a
21 result.
22 I understand this is a presumption case and that
23 the government is going to say it's a presumption case. It's
24 a heroin matter and that he's presumed to be detained.
25 Well, I think with a home and financially

4

1  responsible people, we can overcome that presumption and then
2  there's the simple principle that he should be entitled to
3  bail to fight this case.
4          He's never been arrested.  He's 46 years old.  He
5  looks a lot younger.  But he's 46 years old and has never
6  been arrested before.  He has no criminal history.
7          With I think the proposed components that would
8  more than insure the safety of the community, and will insure
9  that there's --  I don't think that there's any risk of
10 flight, given his family ties to the East Hartford,
11 Connecticut area.
12         MS. KONIUSZY:   Your Honor, the government opposes
13 bail in this case.  Mr. Djibo has extensive ties abroad.
14         He is a citizen of Togo.  He was, in fact, arrested
15 at JFK Airport as he was about to board a flight out of
16 United States.  The agents were able to stop him just before
17 he boarded the plane, but he was moments away from leaving
18 the country.
19         He has extensive family and business ties all over
20 the world.  He has family in Togo. He has connections to the
21 UK.  He has business relationships with Europe.  He travels
22 frequently and we're not even sure how many passports he has
23 at this point.
24         I understand the defendant has real estate all
25 around the world and is in the process now of building a

5

1     mansion in Togo.
2              We believe that the financial reportings that he's
3     made here in the United States far underestimates his actual
4     income probably because that income is from illicit proceeds.
5              He is charged in this case in being involved with
6     an importation scheme of heroin.
7              The particular trip that he was arrested in
8     connection with this time involved over six kilograms of
9     heroin, but we believe he has connections with extensive
10    importation schemes, spanning multiple continents and going
11    back a number of years.
12             In total, I suspect he probably is responsible for
13    millions of dollars worth of heroin importation.
14             For someone with that type of financial resources
15    and international connections, a bail package of 100 or
16    $200,000 is simply inconsequential to his overall financial
17    status.
18             Even if he posts his house as -- to secure the
19    bond, even a house worth 200 or $250,000 is something that I
20    don't believe the defendant would hesitate to walk away from,
21    considering his real estate holdings abroad, including, as I
22    said, a mansion that's being built right now in West Africa.
23             He has significant family ties in Africa as well.
24    I believe he has a wife there.  And the family that he has
25    here, I think some of those children are by the wife in

6

1  Africa and the -- his status here appears to have been
2  obtained fraudulently.
3           In prior immigration applications, he is a legal
4  permanent resident now but we denied formal naturalization by
5  the immigration authorities because of bad moral character,
6  because they found him to have misrepresented his status and
7  lied on his application.
8           And so his current immigration status in this
9  country is questionable to begin with and given the
10 significant financial ties and his relationship ties abroad
11 and the circumstances of his arrest, we just don't see him
12 being a safe risk to avoid flight.
13          I will note that Togo, where he's a citizen, has no
14 extradition treaty with the United States.
15          THE COURT:  When did the denial of naturalization
16 occur?
17          MS. KONIUSZY:   I would have to check those
18 records. I don't have that date in front of me. I believe he
19 has legal permanent resident status.
20          MR. DeCASTRO:  2014.
21          Judge, can I just respond to a couple of those
22 points.
23          THE COURT:  Sure.
24          MR. DeCASTRO:  First, with respect to the
25 circumstances of his arrests in that he was leaving the

7

1 country, there's never been an allegation that he was fleeing
2 or that he was not returning.
3 Yes, he's a Togo citizen and travels to Togo and he
4 has family in Togo, but that doesn't necessarily mean that
5 he's not going to return to his five children here in the
6 United States and with the proposed bail package, he wouldn't
7 be traveling anywhere. He would be on home detention being
8 monitored by pretrial services and there would be no
9 traveling.
10 In fact, if he were to leave, and I understand the
11 government's argument that well, okay, they have a lot of --
12 they haven't given you any solid evidence that he's involved
13 in something much larger and that $200,000 is not
14 significant.
15 But I don't know how the homelessness of his
16 children, if he were to leave and lose his home, and all
17 these children would not have a home here in the U.S. would
18 not be very, very significant.
19 The issue that he has children in Africa, that's
20 not true. They're not -- there's not another wife in Africa,
21 to my knowledge. And I just do not think that this is a
22 defendant that cannot be supervised by pretrial, and pretrial
23 believes that they can supervise this defendant as well.
24 There's -- a lot has been discussed about other
25 crimes, but the defendant is charged with one conspiracy here

1    and all -- and a lot of what the government has said was not
2    in a very, very detailed complaint, I might add.  It was not
3    included in that very detailed complaint.
4         So if those are charges that are coming, perhaps,
5    but he has been indicted and my understanding is it's not
6    based on this alleged million dollars of -- more than a
7    million dollars worth of heroin importation.
8         MS. KONIUSZY:  Your Honor, I could add that the
9    charges that he was indicted on for the courier trip now,
10   that courier alone was being paid up to $50,000 for a single
11   trip into the United States.  So that's one week's worth of
12   work.
13        If he's willing to pay his courier's $50,000 for
14   one trip, $200,000 is inconsequential to this defendant.
15        THE COURT:  I'm pulling up the complaint. Let me
16   just take a quick look.
17      (Pause.)
18        MR. DeCASTRO:  Judge, I think I have a copy of the
19   complaint, if you'd like.
20        THE COURT:  All right.  I'll take a look.
21      (Pause.)
22        THE COURT:  I think the complaint suggests that Mr.
23   Djibo was involved in rather extensive importation
24   activities.  And given the quantity of drugs involved, I
25   don't find the bail package sufficient. I agree with Pretrial

9

1     it may not -- it may be a bailable case, but his signature on
2     a home that he may be prepared to lose, given what appears to
3     be his access to substantial monies, just doesn't provide
4     sufficient security to insure that he will not flee and it's
5     not sufficient to rebut the presumption in this case.
6              So I'm denying the bail application.
7           (Proceedings concluded at 11:26 a.m.)
8              I, CHRISTINE FIORE, court-approved transcriber and
9     certified electronic reporter and transcriber, certify that
10    the foregoing is a correct transcript from the official
11    electronic sound recording of the proceedings in the above-
12    entitled matter.

*Christine Fiore*

                                               June 9, 2015
        Christine Fiore, CERT