# LAW OFFICE OF
# ZACHARY MARGULIS-OHNUMA

July 1, 2015

<u>**Via ECF and U.S. Mail**</u>

Hon. Sterling Johnson, Jr.
United District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    RE: <u>U.S. v. Adamou Djibo,</u> 15-CR-88 (SJ)

Dear Judge Johnson:

This office represents the defendant Adamou Djibo in the above-captioned case, which is scheduled for trial beginning on July 13, 2015. Mr. Djibo hereby moves for an order suppressing:

(1)     All statements made by him during the course of his arrest, including his statement identifying the password to his iPhone; and

(2)     All property seized from him during the course of his arrest, including but not limited to data retrieved from his iPhone pursuant to a subsequent search warrant.

In brief, this material is subject to suppression because (1) both the statements and the property are the fruit of a warrantless arrest without probable cause; (2) the statements violated the <u>Miranda</u> rule because they were taken before Mr. Djibo was advised of his rights; and (3)

260 Madison Avenue • New York, NY 10016
(212) 685-0999 • zach@zmolaw.com
www.zmolaw.com

**LAW OFFICE OF ZACHARY MARGULIS-OHNUMA**

the data on the devices is fruit of the poisonous tree because it could not have been accessed without information contained in Mr. Djibo's involuntary statements, i.e. the passwords that Mr. Djibo was forced to provide while he was in custody. In the event suppression is not summarily granted, we request an evidentiary hearing on these motions and, if necessary, a brief adjournment of the trial in order to obtain expedited transcripts and submit further legal argument.

In support of these motions, attached hereto please find the following exhibits:

(1) A Report of Investigation describing Mr. Djibo's alleged statements to law enforcement and the circumstances of his arrest (hereinafter "ROI"), Ex. A;

(2) An affidavit executed by Mr. Djibo describing the circumstances of his arrest and the seizure of his electronic devices, Ex. B; and

(3) An affidavit filed in support of a warrant to search Mr. Djibo's electronic devices, Ex. C.

The factual and legal basis for the motions is set forth in further detail below.

## Facts

**The Airport Arrest.** Adamou Djibo was arrested without a warrant by agents from the Department of Homeland Security ("DHS") as he was boarding a plane to London on February 3, 2015. The basis for the arrest was set forth in a Complaint dated the following day by Special Agent Thomas E. Wilbert. See Dkt. No. 1. In the Complaint, Agent Wilbert alleged that an unnamed co-conspirator who was caught entering the United States with heroin claimed in a post-arrest statement that Mr. Djibo was his accomplice in the drug importation. See Compl. at 2-4. There is no indication that the alleged co-conspirator had ever provided reliable

**LAW OFFICE OF ZACHARY MARGULIS-OHNUMA**

information before or that he made any accusation against Mr. Djibo other than immediately following his own arrest. However, according to the complaint, coded electronic communications between the alleged co-conspirator and Mr. Djibo were found on the alleged co-conspirator's mobile telephone. Compl. at 3-5.

Agents questioned Mr. Djibo at the time of the arrest but prior to reading him <u>Miranda</u> warnings. Although the government has provided only a redacted version of the Report of Investigation, Ex. A,[1] according to Mr. Djibo the arrest took place as he was boarding an international flight at JFK Airport. Ex. B ¶ 4. After removing him to a separate room, agents questioned him about his telephone numbers and passwords. <u>See</u> Ex. A at 1; Ex. B at 4. They also strip-searched him. The government appears to concede that Mr. Djibo "was advised of his constitutional rights," only <u>after</u> he was required to divulge his passwords. Ex. A at 2.

**The Prosecution.** A six-page complaint was filed the following day and Mr. Djibo was arraigned before Magistrate Judge Vera M. Scanlon. At arraignment, Mr. Djibo waived his right to a preliminary hearing. <u>See</u> Dkt. No. 2 (minute entry for preliminary hearing).

On March 5, 2015, the government filed a four-count indictment alleging conspiracy to import and possess with intent to distribute one kilogram or more of heroin from September 2, 2014 until January 11, 2015 and substantive importation and possession of heroin on January 11, 2015, the day the alleged co-conspirator was caught. Dkt. No. 6: Indictment. Each of the four counts of the indictment carries a mandatory minimum of ten years imprisonment.

**The Ongoing Investigation.** On March 3, 2015, the government filed applications for two search warrants: one for Mr. Djibo's emails and one for the devices seized when

---

[1] I have repeatedly asked the government for an unredacted version of this document but so far have received no response.

7/1/2015
Page 3

he was arrested. See Ex. C (affidavit in support of search warrant for the electronic devices).[2] Both search warrants were signed by the Hon. Ramon E. Reyes, Jr. that same day. According to documents disclosed in discovery, a forensic examination of one of the phones seized was conducted on March 12, 2015. This examination created an "Extraction Report," which revealed, the government maintains, incriminating communications between Mr. Djibo and the co-conspirator.

## Argument

### 1. MR. DJIBO'S STATEMENTS AND PROPERTY SHOULD BE SUPPRESSED BECAUSE THERE WAS NO PROBABLE CAUSE FOR THE WARRANTLESS ARREST

Mr. Djibo moves to suppress his statements and all property seized from him on the ground that they were the fruits of a warrantless arrest without probable cause. See, e.g., U.S. v. Crews, 445 U.S. 463, 470 (1980) (exclusion applies to tangible material and statement obtained through an illegal search or detention). It is undisputed that Mr. Djibo was doing nothing illegal when he was taken from the boarding area and arrested. It is also undisputed that no arrest warrant or indictment had issued at the time of Mr. Djibo's arrest. We generally dispute the self-serving, post-arrest allegations of the co-conspirator that Mr. Djibo was involved in criminal activity with him. The Complaint offers nothing to support that the statements are reliable. The supposed corroboration on the co-conspirator's cell phone does nothing to explain how the agents knew that the person they were arresting (i.e. Mr. Djibo) was the same person that the co-conspirator communicated with.

Accordingly, the facts giving rise to probable cause are in dispute. In order to offer the investigative fruits of the arrest in evidence, the government has the burden of

---

[2] We do not challenge the validity of the search of Mr. Djibo's emails, which, the government contends, also contain incriminating evidence.

LAW OFFICE OF ZACHARY MARGULIS-OHNUMA

showing that the arrest was lawful at an evidentiary hearing. See U.S. v. Pena, 961 F.2d 333, 338-39 (2d Cir. 1992), quoting, U.S. v. Rivera, 321 F.2d 704, 706 n. 1 (2d Cir. 1963) ("[O]n a motion to suppress on the ground of illegal arrest without a warrant the burden is on the Government to show that there was probable cause for the arrest.").

2. **MR. DJIBO'S PRE-MIRANDA STATEMENTS SHOULD BE SUPPRESSED**

Under Miranda v. Arizona, 384 U.S. 436, 444 (1966), warnings are required prior to the interrogation of a suspect who is in custody. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. In order to determine whether a person is in custody for purposes of Miranda, "[t]he proper inquiry is [] whether a reasonable person in [the defendant's shoes] would have felt free to leave under the circumstances." U.S. v. Ali, 68 F.3d 1468, 1472-73 (2d Cir. 1995).

In this case, Mr. Djibo was restrained when the agents questioned him. He was about to board a plane and forced to miss his expensive overseas flight. He was surrounded by plain-clothes investigative officers and removed from the boarding area. He was restrained in a small room, strip-searched and, ultimately, arrested. See Ex. B. Thus any interrogation required Miranda warnings. Id. (remanding denial of suppression motion where defendant was "asked to step away from the boarding area, his travel documents were removed, and he was surrounded by seven officers with visible handguns").

At the same time, the agents' demand for Mr. Djibo's passwords constituted interrogation and violated his Fifth Amendment privilege against self-incrimination. See U.S. v. Rogozin, 2010 WL 4628520 at *6 (suppressing incriminating statements made during border search without Miranda warnings, including a statement as to the password to a

device). A grand jury cannot lawfully compel a defendant to reveal a password, because doing so would violate the Fifth Amendment. See, e.g., In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011, 670 F.3d 1335 (11th Cir. 2012). "Forcing [a defendant] to reveal the password for the computer communicates the factual assertion to the government, and thus, is testimonial—it requires [the defendant] to communicate 'knowledge' unlike the production of a handwriting sample or voice exemplar[.]" U.S. v. Kirschner, 823 F.Supp.2d 665, 669 (E.D. Mich. 2010) (quashing subpoena requiring password because compelling defendant to divulge password would violate the Fifth Amendment); see also Winkler, Andrew T., "Password Protection and Self-Incrimination: Applying the Fifth Amendment Privilege in the Technological Era," 39 Rutgers Computer & Tech. L.J. 194 (arguing that compelling an individual to enter or reveal a password in order to obtain incriminating evidence violates the Fifth Amendment). Thus the Fifth Amendment and the Miranda rule prevented the agents from doing what they did here: forcing a suspect to reveal his passwords.

To the extent the government disagrees, an evidentiary hearing should be held. See, e.g., U.S. v. Pena, 961 F.2d 333, 338-339 (2d Cir. 1992) (hearing required if moving papers are sufficiently definite, specific, detailed, and non-conjectural).

### 3. DATA FROM MR. DJIBO'S ELECTRONIC DEVICES SHOULD BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE

Agents were able to execute the search of Mr. Djibo's iPhone and iPad only because he provided them with passwords that made the searches possible.[3] Using the

---

[3] According to the forensic report provided in discovery, the iPhone was an iPhone 5 running iOS 8.1.2. See AD00450 iPhone Extraction Report at 1. This version of iOS offers encryption that the government cannot break without the owner's password. See https://www.fbi.gov/news/speeches/going-dark-are-technology-privacy-and-public-safety-on-a-collision-course. See also Riley v. California, 134 S.Ct. 2473, 2486 (2014) (United States, as amicus, argues that encryption renders cell

**LAW OFFICE OF ZACHARY MARGULIS-OHNUMA**

passwords that Mr. Djibo provided while he was detained, the government was able to obtain incriminating evidence on his iPhone. But, as Mr. Djibo states in his affidavit, he was forced to provide the iPhone password. Because his custodial statement providing his password to the agents was involuntary, it violated the Fifth Amendment. "[T]hose subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial." U.S. v. Patane, 542 U.S. 630, 640 (2004). Accordingly, all evidence derived from the passords—including the evidence found on Mr. Djibo's iPhone-must be suppressed. See also Wong Sun v. U.S., 371 U.S. 471, 486 (1963) (suppressing, inter alia, drugs found as a result of statements derived from an unlawful search).[4]

---

phone "all but 'unbreakable' unless police know the password"). To the extent the government disagrees with this assertion, we would request an opportunity to present expert witnesses at the evidentiary hearing to support it.

[4] The government may argue that physical evidence derived from a mere Miranda violation is not subject to the Wong Sun fruit-of-the-poisonous tree rule. See U.S. v. Patane, 542 U.S. 630 (2004). We disagree with this contention with respect to electronic device passwords, as the Wong Sun rationale, deterrence of police misconduct, is well-served by suppression in this context; otherwise, officials could, as here, take advantage of a defendant's ignorance of his right not to answer their questions when their real object is access to his private devices. See Riley v California, 134 S.Ct. 2473, 2489-91 (2014) ("a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is."). In any event, though, our claim on this motion is that the data on the iPhone was the fruit not only of a Miranda violation but also of a coerced, involuntary statement in violation of the Fifth Amendment itself. The fact that as soon as Mr. Djibo learned of his right to remain silent he invoked that right further supports his assertion that he turned over his passwords involuntarily.

**LAW OFFICE OF ZACHARY MARGULIS-OHNUMA**

## Conclusion

For the reasons set forth above, Mr. Djibo's motions to suppress should be GRANTED or an evidentiary hearing should be held in advance of the trial, with a brief adjournment to obtain transcripts and make legal arguments, if necessary.

Thank you for your attention to this case.

Very truly yours,

*Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma

CC: AUSA Karen Koniuszy, Esq.

Encls.