

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. # 2015R00200

271 Cadman Plaza East
Brooklyn, New York 11201

July 9, 2015

By ECF

The Honorable Sterling Johnson, Jr.
United States District Judge
United States District Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Adamou Djibo
                Docket No. 15-CR-088 (SJ)

Dear Judge Johnson:

        The government respectfully submits this response in opposition to the defendant's motion to suppress statements and evidence in the above case. As set for more fully below, the defendant's arguments fail as a matter of law and, accordingly, a suppression hearing is unwarranted. In short, even if the facts alleged in the defendant's motion are true, there is no basis to suppress either the defendant's statements or the cellular telephone seized from him on February 3, 2015.

## I.    Background

        This is a heroin importation and distribution conspiracy case, in which the defendant was a key member of an international narcotics trafficking organization responsible for importing large amounts of heroin into the United States from Togo. On February 3, 2015, the defendant was arrested at JFK International Airport as he attempted to board a flight out of the United States. The defendant's flight destination was the United Kingdom, via Amsterdam, although the defendant concedes in his affidavit that his ultimate destination was Togo.

### A.  The Border Search

        After checking in for his flight on February 3, 2015 and obtaining his boarding pass, the defendant passed through the TSA security checkpoint and made his way to the boarding gate. At the departure gate, Customs and Boarder Protection ("CBP") officers selected the defendant for additional screening and conducted an outbound border examination prior to airplane boarding. The CBP officers asked the defendant to step aside from the line of boarding passengers so as not to obstruct the boarding process. The defendant agreed. The CBP officers conducted a border search of the defendant's carry-on

luggage and other property and located multiple electronic devices and cellular telephones in the defendant's possession, including an Apple iPhone (the "Subject iPhone"). As part of the boarder search, the defendant was asked for and provided the passcode to the Subject iPhone to agents from the Department of Homeland Security, Homeland Security Investigations ("HSI") who were assisting the CBP officers. During this time the defendant was not under arrest and remained in the airport terminal boarding area near the departure gate.

### B. The Defendant's Arrest

After CBP officers completed the border search of the defendant's property, the defendant was placed under arrest. He was taken from the boarding gate area to an office elsewhere in the terminal for arrest processing. HSI agents advised the defendant of his Miranda rights, which he invoked. No post-arrest questioning took place.

Due to the late hour, the defendant was taken to the Metropolitan Detention Center in Brooklyn, New York for overnight lodging. He was presented for arraignment the following day in the Eastern District of New York.

On March 5, 2015 a grand jury in the Eastern District of New York returned a four-count indictment charging the defendant with (1) conspiracy to import heroin, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A); (2) importation of heroin; in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(1)(A); (3) conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i); and (4) possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i). See Dkt. No. 6. On July 1, 2015, a grand jury in the Eastern District returned a Superseding Indictment (the "Indictment"), charging the defendant with the same four counts but expanding the date range on the conspiracy counts. See Dkt. No. 22.

On March 3, 2015, the Honorable Ramon E. Reyes, Jr. issued a search warrant for the Subject iPhone.

## II. There is No Basis to Suppress the Defendant's Statements or his Property because All Were Lawfully Obtained.

The defendant argues that his border search statements and his physical property seized, including the Subject iPhone and records obtained from it, should be suppressed for three reasons. None are sound.

### A. The Defendant's Probable Cause Challenges are Unwarranted because Probable Cause is Not Necessary for a Border Search a Grand Jury has Already Returned an Indictment

First, the defendant argues that his statements and property should be suppressed because "they were the fruits of a warrantless arrest without cause." Mot. at 4. The defendant is wrong. As an initial matter, the defendant's statements and property were obtained pursuant to a border search at the airport boarding gate. "It is well established that

2

the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime . . . . Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." Tabbaa v. Chertoff, 509 F.3d 89, 97-98 (2d Cir. 2007). Accord United States v. Ramsey, 431 U.S. 606, 619 (1977) (routine border searches without a warrant, probable cause or reasonable suspicion deemed "reasonable" in light of government's interests in protecting its border); United States v. Thirty-Seven Photographs, 402 U.S. 363, 376 (1971) (border searches reasonable because they further the goals of law enforcement). That the defendant was departing the United States rather than arriving into the country is of no matter. The border search exception applies to outbound border searches the same way that it applies to inbound border searches. United States v. Swarovski, 592 F.2d 131, 133 (2d Cir. 1979) ("The warrantless searches of appellant's luggage as he was about to depart the country did not violate his Fourth Amendment rights."). As the Second Circuit explained, "that customs officials can make such a search only when the person whose effects are being searched is entering the United States is not the law." Id. (collecting cases).

Electronic devices, such as Subject iPhone, are equally covered under the border search exception in addition to items like luggage or personal property. See United States v. Irving, 452 F.3d 110, 123-24 (2d Cir. 2006) ("Searches of a person's luggage or personal belongings are routine searches.") Searches of computers and other electronic devices such as cellular telephones "are likewise considered routine searches that may be conducted in the absence of reasonable suspicion." United States v. Young, No. 12-CR-00210-RJA-JJM, 2013 U.S. Dist. LEXIS 33496, at *5 (W.D.N.Y. Jan. 16, 2013) (citing United States v. Arnold, 533 F.3d 1003, 1008 (9th Cir. 2008), cert. denied, 555 U.S. 1176 (2009). As the Ninth Circuit reasoned, "reasonable suspicion is not needed for customs officials to search a laptop or other personal electronic storage devices at the border." Arnold, at 1008. See also United States v. Linarez-Delgado, 259 Fed. Appx. 506, 508, 2007 WL 4525200, *1 (3d Cir. 2007) ("Data storage media and electronic equipment, such as films, computer devices, and videotapes, may be inspected and viewed during a reasonable border search").

At the time law enforcement officers conducted the search, the defendant was not under arrest and was lawfully subject to such a search because he had already passed through the TSA security checkpoint and was at the "border" about to board an international flight. Accordingly, probable cause was not needed to stop, question, and search the defendant.

The defendant's attempt to challenge the basis for his subsequent arrest is also without merit. As set forth more fully in the six-page Complaint, ample probable cause exists for this defendant's arrest. See Dkt. No. 1. It is not necessary to make a "prima facie showing of criminal activity" or to show that it is more probable than not that a crime occurred. United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987). The Complaint more than satisfies this standard. As the Complaint explains, after a drug courier was arrested attempting to enter the United States on a flight from Togo with more than six kilograms of heroin concealed in his suitcase, law enforcement agents seized and searched the courier's

3

cellular telephone.  Records obtained from that search evidenced this defendant's extensive involvement in the drug smuggling operation and, combined with immigration records, provided overwhelming cause for his arrest.  Since then, two different grand juries have agreed there was sufficient probable cause to proceed with this case and returned an indictment and superseding indictment against the defendant.  The idea that the sufficiency of the Complaint can be challenged at this stage in proceedings—post-indictment, with overwhelming evidence of the defendant's crimes mounting—is baseless.

The defendant's challenge to the basis for his arrest is no more than a thinly-disguised attempt to preview the government's trial evidence and prematurely obtain § 3500 materials for potential witnesses.  These attempts are misguided.  The goal of a probable cause standard is not "to finally determine guilt through a weighing of evidence," and the defendant should not be permitted to do so here.  Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).  The government has already provided Rule 16 discovery and will provide § 3500 material in a timely fashion before trial.  This fishing expedition has no merit and should be rejected.

### B. The Law Does Not Require Probable Cause for Outbound Border Searches

Next, the defendant argues that his pre-Miranda statements should be suppressed.  Mot. at 5.  The law says otherwise.  The defendant's pre-Miranda statements were not obtained incident to arrest, but rather in the course of a border search, where the defendant was not "in custody."   The over-arching "custody" question for Miranda purposes is whether a reasonable person in a suspect's position would significantly have understood himself to be subjected to restraints comparable to those associated with a formal arrest. United States v. FNU LNU, 653 F.3d 144, 153 (2d Cir. 2011) (denying appeal of motion to suppress statements obtained during border search without Miranda warnings).  In FNU LNU, the defendant had been stopped at the border and subjected to an interrogation in a closed room, out of public view, with an armed guard escort, lasting for 90 minutes.  Id.  The Second Circuit found that even under these circumstances, which are far more severe than even the defendant's own account of his CBP examination, a reasonable defendant could not find what occurred to be "the equivalent of a formal arrest."  Id. at 155.   The court explained that a reasonable person would consider such an examination "par for the course" when entering the country from abroad.  Id.

In the instant case, the defendant was stopped for a routine border examination by CBP officers at the airport boarding gate.  He was taken aside from the passenger boarding line, but was not removed from the boarding gate area for the CBP examination.  As any reasonable traveler knows, such examinations are "par for the course" when attempting an international departure from a United States airport.  See FNU LNU, at 155.  There was nothing unusual about questioning the defendant's travel plans, nor was there anything unusual about searching his electronic devices.  Young, 2013 U.S. Dist. LEXIS 33496, at *5 (border searches of electronic devices are "considered routine searches that may be conducted in the absence of reasonable suspicion.").  Inquiring about a device's passcode in order to be able to execute that search falls squarely within the routine border search protections and does not violate the defendant's Miranda rights in this case.

4

### C. The Fruit of the Poisonous Tree Doctrine Does Not Apply to Miranda Violations

The defendant next argues that records obtained from a search of his Subject iPhone should be suppressed as "fruit of the poisonous tree." Mot. at 6. This ignores well-settled Supreme Court precedent that the Miranda rule "does not require that the statements taken without complying with the rule and their fruits be discarded as inherently tainted." United States v. Patane, 542 U.S. 630, 639 (2004) (internal citations and quotations omitted) (holding that physical evidence obtained as a result of unwarned statements is not excluded by Miranda). That is because the Fifth Amendment only proscribes "extract[ing] from the person's own lips an admission of guilt, which would thus take the place of other evidence." Id. at 637. "The Miranda presumption of coercion," however, "has not barred the use of unwarned, voluntary statements . . . to locate non-testimonial evidence . . . ." United States v. Morales, 788 F.2d 883, 886 (2d Cir. 1986). Indeed, "[a]n interrogating officer's failure to advise a suspect of his Miranda rights does not require suppression of the physical fruits of the suspect's unwarned statements." United States v. Capers, 627 F.3d 470, 493-494 (2d Cir. 2010).

Here, the Subject iPhone's records were created by the defendant before the involvement of law enforcement and therefore does not contain "compelled testimonial evidence." Flynn v. James, 513 Fed. Appx. 37, 40 (2d Cir. 2013) (holding statements on a cassette tape seized from the defendant were admissible and did not violate Miranda because they were created voluntarily before police involvement). Moreover, the Subject iPhone search was conducted only after obtaining a search warrant from a magistrate judge, adding an additional layer of protection against unwarranted intrusion into the device's contents. Accordingly, even if the defendant's statements, including the Subject iPhone passcode, were obtained in violation of Miranda, the fruits of the Subject iPhone search are not tainted and should not be suppressed.

## III. The Subject iPhone Records Would Have been Inevitably Discovered

The government maintains that the Subject iPhone passcode was lawfully obtained pursuant to a border search and that, even if a Miranda violation did occur, the subsequent search of the device was not tainted. But even if the Court finds otherwise and suppresses the defendant's statement providing the passcode to unlock the Subject iPhone, the lack of a passcode is not fatal to the government's ability to obtain the records. That is because HSI is in possession of technology that would allow its forensic technicians to override the passcode security feature on the Subject iPhone and obtain the data contained therein. In other words, even if HSI agents did not have the defendant's passcode, they would nevertheless have been able to obtain the records stored in the Subject iPhone using specialized software. The software works to bypass the passcode entry requirement and "unlock" the cellular telephone without having to enter the code. Once the device is "unlocked" all records in it can be accessed and copied.

For all of the above reasons, the Court should deny the defendant's motion to suppress statements and physical evidence seized at the airport on February 3, 2015.

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney

By:   /s/ Karen L. Koniuszy
Karen L. Koniuszy
Assistant U.S. Attorney
(718) 254-6072

cc: Zachery Margulis-Ohnuma, Esq. (via ECF)
     Clerk of the Court (SJ) (via ECF)